# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mohammed Muktar,<br><br>                      Petitioner,<br><br>v.<br><br>Jon Gurule,<br><br>                      Respondent. | No. CV-16-04028-PHX-GMS (DMF)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE G. MURRAY SNOW, UNITED STATES DISTRICT JUDGE:**

Petitioner, presently incarcerated at the Eloy Detention Center in Eloy, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on November 18, 2016 ("Petition") (Doc. 1). Petitioner alleges he is entitled to release from custody with supervision in the community because there is no prospect that his removal from the United States will occur in the reasonably foreseeable future. Respondent filed a Response on February 21, 2017 (Doc. 12). Petitioner did not file a Reply. On April 18, 2017, Respondent filed an update regarding detention status on the Court's direction to do so (Docs. 13, 14). This matter is ripe for decision.

This Report and Recommendation is pursuant to: Rule 8(b), Rules Governing Section 2254 Cases[1]; Rule 72(b), Federal Rules of Civil Procedure; 28 U.S.C. § 636(b);

---

[1] The Rules Governing Section 2254 Proceedings are applicable to petitions for writs of habeas corpus under 28 U.S.C. § 2241. *See* Rules Governing Section 2254 Cases, Rule 1(b).

and Rules 72.1(c) and 72.2(a)(2), Local Rules of Civil Procedure. Undersigned recommends that the Petition be denied.

I. **BACKGROUND**

Petitioner is a native and citizen of Ghana (Doc. 1 at 12). He applied for admission into the United States, and requested political asylum at the Nogales, Arizona port of entry on December 27, 2014 (*Id.*). United States Customs and Border Protection officers charged Petitioner with a violation of the Immigration and Nationality Act as an immigrant not in possession of a valid entry document (*Id.*). On December 28, 2014, he was detained at the Eloy Detention Center (*Id.*). After a credible fear interview in January 2015, an Asylum Pre-Screening Officer made a finding of credible fear (*Id.*). On January 23, 2015, Immigration and Customs Enforcement ("ICE") reviewed Petitioner's custody "for consideration of release on parole," but denied parole (*Id.*). On April 8, 2015, ICE again reviewed Petitioner's custody for consideration of release on parole, and again denied parole (Doc. 1 at 13). An Immigration Judge provided Petitioner a bond hearing on August 28, 2015, and granted a $20,000 bond (*Id.*). The record contains no additional details regarding this bond.

On May 11, 2016, an Immigration Judge ordered Petitioner removed from the United States to Ghana ("removal order"), and Petitioner expressly waived his right to appeal the order (Doc. 1 at 13, Doc. 12-1 at 3). The order further denied Petitioner asylum and withholding of removal (*Id.*). On August 8, 2016, the Office of Enforcement and Removal Operations under ICE conducted a post-order custody review. (Doc. 1 at 12-13) Petitioner was advised he would be retained in custody, in part because he was subject to a final order of removal and his removal was "imminent pending the adjudication of [his] reasonable fear claim" (Doc. 1 at 13). The deciding officer further advised Petitioner that he was not able to conclude either that Petitioner was not a flight risk or that Petitioner "would be able to comply with the requirements of an Order of Supervision if [he] were to be released" (*Id.*). ICE subsequently notified Petitioner of its decision dated November 17, 2016 that it had reviewed Petitioner's custody status and had determined that he would not be released from detention at that time, explaining that

ICE was working with the government of Ghana to obtain travel documents permitting him to be removed back to Ghana, and that such documents were "expected" (*Id.*).

In a declaration dated February 9, 2017, a deportation officer within the Enforcement and Removal Operations ("ERO") averred in a sworn statement that after Petitioner's order of removal became final: (1) in May 2016, the ERO sought intra-departmental assistance in obtaining necessary travel documents for Petitioner, which were delivered to the Ghanaian Embassy in Washington D.C.; (2) in June 2016, the ERO was advised that Petitioner's interview with the embassy was "to be determined"; (3) in July 2016, the ERO was further advised that the embassy had not made progress on the issue of Petitioner's travel documents; (4) in September 2016, the ERO learned that the Ghanaian Embassy had not been conducting interviews, but would recommence in the near future; (5) in both October and November 2016, the ERO was advised that interviews were expected to resume shortly; (6) the ERO learned in late December 2016 that the embassy would interview all pending "cases" in January 2017; (7) on January 31, 2017, Petitioner interviewed with an embassy representative and advised ERO that the representative told him the embassy would be issuing Petitioner a travel document; and (8) as of February 9, 2017, there had been no update from the embassy on the travel document request (Doc. 12-1 at 6-7).

The Petition was filed under 28 U.S.C. § 2241 on November 18, 2016 (Doc. 1). This filing date was shortly after the expiration of the six-month period commencing on May 11, 2016, the date Petitioner was ordered removed from the United States to Ghana. Petitioner asserts a single ground for relief, arguing that he should be released from detention because his removal order was entered greater than six months prior (Doc. 1 at 4). A six-month period is the presumptively reasonable detention period established by the U.S. Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001) (*Id.*) Petitioner seeks relief in the form of supervisory release. (Doc. 1 at 9)

Respondent argues that Petitioner has failed to meet his burden under *Zadvydas* to show that his removal in the reasonably foreseeable future is not substantially likely, and

that the evidence instead supports the conclusion that Petitioner's removal is imminent (Doc. 12 at 3). Petitioner did not file a Reply.

In response to a Court Order directing a status update, on April 18, 2017, Respondent filed an update supported by a declaration of a deportation officer (Docs. 13, 14). The update stated in part:

> Subsequent to the Answer (doc. 12), which was filed on February 21, 2017, on March 7, 2017, Headquarters Removal and International Operations ("HQRIO") informed Enforcement and Removal Operations ("ERO") in Eloy, Arizona, that they were expecting an answer soon from the Consulate General of the Embassy of Ghana as to the issuance of a travel document for Petitioner. *See* Exhibit 1, ¶ 4. On March 22, 2017, HQRIO informed ERO-Eloy that the Embassy of Ghana had agreed to issue a travel document for Petitioner. *Id.* at ¶ 5. This confirms what was told to Petitioner at his interview by a representative of the Embassy on January 31, 2017. (Doc. 12, p. 3.)
>
> Although the travel document has not yet been received, *see* Exhibit 1, ¶ 5, the Embassy has now stated to both Petitioner and HQRIO that it will issue a travel document for Petitioner. The Embassy of Ghana earlier committed to interviewing Petitioner by the end of January, 2017, and then did so. It is reasonable to expect that the Embassy will also honor its commitment to issue a travel document, which will lead to Petitioner's removal to Ghana.
>
> As a result of the Embassy of Ghana's stated commitment to provide a travel document for Petitioner, Petitioner's removal continues to be significantly likely in the reasonably foreseeable future, and the government retains an interest in "assuring [his] presence at the moment of removal." *See Zadvydas*, 533 U.S. at 699.

(Doc. 14 at p. 2).

## II. DUE PROCESS LIMITS ON DETENTION PENDING REMOVAL

Under federal statutes governing detention, release, and removal of aliens subject to a removal order, "[o]rdinarily, the INS is expected to remove an alien in its custody within ninety days from the issuance of a final removal order." *Pelich v. I.N.S.*, 329 F.3d 1057, 1058–59 (9th Cir. 2003). *See* 8 U.S.C. § 1231(a)(1)(A)-(B). However, when removal is not completed within that time, various provisions permit continued detention

of the alien, including 8 U.S.C. subsections 1231(a)(1)(C) and (a)(6). Subsection 1231(a)(1)(C) requires extension of the 90-day removal period and permits detention of an alien beyond that period if the alien fails or refuses to make timely travel applications or to request documents necessary for removal, or if the alien otherwise conspires or acts to prevent their removal. Subsection 1231(a)(6) provides in relevant part that:

> An alien removed [1] who is inadmissible under section 1182 of this title, [2] [or] removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain terms of supervision].

8 U.S.C. § 1231(a)(6). *See also Zadvydas*, 533 U.S. at 682. The Supreme Court noted that this provision "does not apply narrowly to 'a small segment of particularly dangerous individuals,' … say, suspected terrorists, but broadly to aliens ordered removed for many and various reasons, including tourist visa violations." *Id.* at 691 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 368 (1997)). The Court decided the question of whether Section 1231(a)(6) allowed the detention of a removable alien "*indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." *Id.* at 682 (emphasis in original).

The Supreme Court concluded that constitutional concerns would limit indefinite detention, and construed § 1231(a)(6) to restrict an alien's post-removal detention to "a period reasonably necessary to bring about that alien's removal." *Id.* at 689. The Court established a presumptive six month limitation period[2], after which the alien may be entitled to release from detention. *Id.* at 701. The Court defined the boundaries of constitutional detention pursuant to § 1231(a)(6):

---

[2] The six-month presumptive detention period described in *Zadvydas* commences after the removal order becomes final. *Clark v. Martinez*, 543 U.S. 371, 386 (2005). *See also Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001) (explaining that the presumptively reasonable detention period after an order to remove becomes final includes the 90-day statutory period, plus an additional three months, which together combine to define a "*six-month* 'presumptively reasonable' detention period.'").

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

The *Zadvydas* Court's decision applied to aliens detained pursuant to § 1231(a)(6) who were removable under § 1227(a)(1)(C), § 1227(a)(2) or § 1227(a)(4). *Rodriguez v. Hayes*, 591 F.3d 1105, 1115 (9th Cir. 2010). The Supreme Court later extended its holding to the other two categories of mentioned in §1231(a)(6), that is, aliens inadmissible under 8 U.S.C. § 1182, and aliens determined by the Secretary of Homeland Security to be a risk to the community or a flight risk. *See Clark v. Martinez*, 543 U.S. 371, 378 (2005). "*Zadvydas* places the burden on the alien to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Pelich*, 329 F.3d at 1059 (quoting *Zadvydas*, 433 U.S. at 701). "The INS must then introduce evidence to refute that assertion." *Id.* at 1059.

### III. DISCUSSION

Petitioner asserts a right to release under *Zadvydas*. He was ordered removed to Ghana on May 11, 2016. He expressly waived his right to appeal the order. Accordingly, the 90-day statutory removal period set forth in 8 U.S.C. § 1231(a)(6) expired on August 9, 2016, and the presumptive 6-month period expired on November 7, 2016. *See* 8 U.S.C. § 1231(a)(1)(B) (stating that "the removal period begins on the latest of the following: (i) [t]he date the order of removal becomes administratively final[;] (ii) [i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[; and] (iii) [i]f the alien is detained or confined (except under an immigration process), the date the alien is released from custody or

confinement."). To date, since his removal order became final, Petitioner has spent approximately twelve months in custody awaiting removal.

Petitioner argues that he has been detained beyond the six-month presumptively reasonable detention period established in *Zadvydas*, and that his "removal is not significantly likely to occur in the reasonably foreseeable future" (Doc. 1 at 4). He notes that he has "cooperated fully with all efforts by ICE to remove [him] from the United States to Ghana" but concludes that those efforts must be "fruitless" and that ICE is unable to obtain his travel documents despite "[ICE's] alleged attempts to do so" (*Id.*).

Petitioner did not file a Reply to Respondent's "Answer in Opposition to Writ of Habeas Corpus," which was filed on February 21, 2017 (Doc. 12). Accordingly, Petitioner's arguments necessarily are based on the state of ICE's efforts to obtain travel documents prior to November 18, 2016, the date the Petition was filed. As noted, Respondent's Answer filed on February 21, 2017 includes more timely information on this subject, including that at the end of January 2017, Petitioner was interviewed by the Ghanaian Embassy and he reported that he was told he would be issued a travel document. (Doc. 12-1 at 7)

Additionally, responsive to this Court's April 11, 2017 order (Doc. 13), Respondent filed a status report providing updated information regarding Petitioner's request for a travel document (Doc. 14). Respondent summarized the status of the request, based on the April 17, 2017 declaration of Deportation Officer Kazlauskas, that on the Embassy of Ghana had agreed to issue a travel document for Petitioner, the Embassy of Ghana earlier committed to interviewing Petitioner by the end of January, 2017, and then did so; thus, it is "reasonable to expect that the Embassy will also honor its commitment to issue a travel document, which will lead to Petitioner's removal to Ghana" (*Id.* at 2). The assumption that Ghana will follow through on its assurance that a travel document is forthcoming is supported by a Report and Recommendation ("R&R") filed on March 17, 2017 by U.S. Magistrate Judge Kimberly Jolson in the Eastern Division of the Southern District of Ohio. *Boahmah v. U.S.*, No. 2:16-CV-00996, 2017 WL 1037144, at *2 (S.D. Ohio Mar. 17, 2017). The R&R noted that an ICE agent had

provided a sworn statement that "as a general matter, there are no impediments to removing aliens to Ghana." *Id.*

Pursuant to *Zadvydas*, the initial burden of proof is not on Respondent to prove there is good reason to conclude that there is a significant likelihood of removal in the reasonably foreseeable future, but rather the burden is on the Petitioner to show there is not. *Zadvydas*, 533 U.S. at 701. Apart from the lack of progress in obtaining a travel document leading up to, and shortly after, the end of the six-month presumptive period, Petitioner offers nothing to show there is not a likelihood of removal in the reasonably foreseeable future. As of April 18, 2017, Respondent has provided sufficient evidence of recent progress between the Ghanaian Embassy and the HQRIO toward the issuance of a travel document that the Court may conclude that Petitioner has not met his burden.

Importantly, this conclusion is based on circumstances existing as of the time this Recommendation is made. If the recent progress does not continue toward the goal of removal, the conclusion would lose its foundation. As noted previously, the U.S. Supreme Court instructed that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.

Based on the foregoing, under current circumstances, Petitioner has failed to meet his burden of showing that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Accordingly, it is recommended that the Petition be denied.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." However, such certificates are only required in cases concerning detention arising "out of process issued by a State court," or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1). The Petition arises under 28 U.S.C. § 2241, and does not attack a State court detention. Therefore, a decision on a certificate of appealability is not required.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus, filed on November 18, 2016 (Doc. 1), be **DENIED** without prejudice because new circumstances may arise which show that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment. However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure*, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated this 8th day of May, 2017.

Honorable Deborah M. Fine
United States Magistrate Judge